*In re* .VERNON P. NOYES' WILL. D. NOYES BURTON, ADMINISTRATOR, APPELLANT.

### *Will. Revocation. Evidence.*

Where a later will is relied upon to revoke the will propounded, such later will must be established by the same evidence as though it were presented for probate itself, and the fact of revocation cannot be shown in any other way.

This was an appeal from the Probate Court for the district of Chittenden, probating the last will and testament of Vernon P. Noyes. The contestant pleaded undue influence and revocation by a later will. Trial by jury at the September Term of the Chittenden County Court, 1887, VEAZEY, J., presiding.

The will offered for probate bore date June 8, 1881. At the opening of the trial the contestant conceded that this will was executed with due formality, and that the testator was, at the time of its execution, of testamentary capacity.

No evidence whatever was introduced by the contestant under his plea of undue influence.

The contestant introduced as a witness the proponent, Julius M. Noyes, who was a brother of the testator, and who testified that after the decease of the testator, he, in the presence of others, opened the testator's tin trunk after the same had been taken from his safe, which was in his bank in Burlington, and in which he kept all his papers, and found the will in question, but found no later will, and the contestant claimed that the effect of this testimony was to show that this will of 1885 had been either lost or destroyed since the decease of the testator.

*In re* Noyes' Will.

For the purpose of showing the revocation of the will propounded by a later one, the contestant introduced one Delany. This witness testified that he had been on most intimate relations with the testator during the last years of his life, in business matters and otherwise, being with him more or less almost daily, and having many confidential talks with him in regard to his property and proposed disposition of it and his will, and in relation to his brothers and sisters and others, and also in relation to his health along and during the latter years of his life, and that he was physically weak and depressed or despondent at times.

He further testified in substance that the testator showed him two wills in 1881, one being the will in question and the other a previous will dated in 1878, and talked about them, and that again in 1885, in August and not long before he died, the testator showed him still another will, dated some time in 1885; that he took this out of his trunk, which he took from his safe in his bank in Burlington; that it was in an envelope with the two previous wills; that the witness read it, and against the objection of the proponent's counsel, he testified as to its contents, and that it was signed in the handwriting of the testator, and had three other names written on it, and was executed apparently in form as the two previous wills were executed, and that the testator talked about it, and said that it was his will, and told why he made it; that it contained a clause revoking the previous wills, but the witness could not tell who the witnesses to it were, or in respect to their handwriting; that the testator told why he made it, and put it back into the envelope with the other wills, and put the package back into the trunk and that back into his safe; that this was the day before he was taken sick, and the last time, as the witness thought, that testator was at his bank, and this was his last sickness, and that he died some days after.

The court held that the revocation of the will offered for probate could not be proved by evidence of this character; that inasmuch as the contestant claimed that the will of 1881 was revoked

by the subsequent will of 1885, he must establish this later will in the manner provided by the statute for proving a will, and that the fact of the revocation could not be established by the parol testimony alone of persons who claimed to have seen it, and heard the testator say it was his will.

This testimony was excluded as to the plea of revocation alone, and the court made no ruling as to the admissibility of any of the evidence offered under the plea of undue influence, and excluded no evidence offered which the contestant claimed supported that plea, nor did the contestant claim that there was any evidence in the case under that plea upon which he asked to go to the jury.

In view of the ruling of the court as to the character of the evidence required to establish the revocation, counsel for the contestant declined to put in any further evidence at that time, and elected to submit to a verdict under the direction of the court, not having introduced any evidence upon which they claimed the right or desired to go to the jury.

Thereupon the court directed the jury to return a verdict for the proponent, which was done, and judgment rendered upon the same, to which the contestant excepted.

*Farrington & Post* and *Hard & Cushman* for the contestant.

Assuming that the absence of the will of 1885 was purely accidental, without intentional fault on the part of anyone, it was legally competent to show its execution as well as its contents by any testimony which would be admissible in a court of law to prove any material fact, and it was not incumbent upon the contestant to introduce any of the attesting witnesses, it not appearing that he knew who they were, or whether they were living. If this is not so, a wide door is left open for wrong and injustice in contests over wills, which are often, if not generally, executed and kept with comparative secrecy, so that in most cases the names, even, of the witnesses are known to but very few, if any, besides those present at the execution.

Testimony, other than that of attesting witnesses, has been repeatedly used to establish wills. *Sugden* v. *St. Leonards,* L. R. Prob. Div. 154, S. C. 17 Eng. R. 453; *Williams* v. *Williams,* 142 Mass. 515; *Bailey* v. *Stiles,* 1 Green Ch. R. 220; *Nelson* v. *McGiffert,* 3 Barb. Ch. R. 158, 164; *Grant* v. *Grant,* 1 Sandf. Ch. R. 235, 243; 1 Wms. Exrs. 398 (top paging) note h.

Whatever the rule may be as to the admissibility of the testimony of witnesses other than the attesting ones where the will has been lost accidentally, such testimony should be clearly competent in a case where it appears that the proponent has, in his own interest, obtained possession of the revocatory will, and clandestinely withholds it.

In this case the testimony of the proponent himself is sufficient to warrant at least a strong suspicion, that the will is in his custody, if it has not been destroyed.

" It is better surely that a person should die intestate, than that the spoliator should be rewarded for his villainy." 1 Red. Wills 350.

Certainly the ruling of the County Court that the revocatory will must be established by decree of the Probate Court, like any other will, before it could be set up as a bar to the one in contest was erroneous. In all cases where such a doctrine is declared, the revocatory instrument had been offered for probate, and been disallowed, before being offered as evidence under a plea of revocation. *Reed* v. *Borland,* 14 Mass. 218; *Laughon* v. *Austin,* 1 Pick. 536; *Stickney* v. *Hammond,* 138 Mass. 116; *Sewall* v. *Robbins,* 139 Mass. 164.

But in *Wallis* v. *Wallis,* 114 Mass. 510, it was expressly held, that where the revoking will is lost or destroyed, it may be made available by proof of its existence and contents, and in *Williams* v. *Williams, supra,* the revocating will, which had been destroyed, had not been probated.

See also on this point, *Bailey* v. *Stiles, supra, Nelson* v. *McGiffert, supra, Jones* v. *Murphy,* 8 Watts & Serg. 275, *Page* v. *Maxwell,* 118, 111, S. C. 6 West. Rep. 505.

(2)

The statement of the testator to Delaney, that the instrument of 1885 was his will, and the testator's explanation why he made it, were competent upon the question whether the instrument was destroyed by the testator *animus revocandi*.  *Sugden* v. *St. Leonards, supra* ; 1 Wms. Exrs., 379 (bottom paging) note p. 2.

*Geo. F. Edmunds, W. L. Burnap* and *Michael H. Cardozo* for the proponent.

No evidence whatever was given or ordered to be given of the execution of the alleged revocatory will of 1885, in the manner and form required by the statute, and, without such evidence, parol proof of its contents was wholly inadmissible.   S. 2047 R. L., s. 2043 *ib.*

Such has always been the statute law of this State, and similar provisions are to be found in the statutes of most of the other States.   They are taken almost bodily from the fifth section of the English Statute of Frauds ; and the reason for their enactment is well stated by Chancellor Kent, 4 Comm. 520, 521, 12th Ed., where he says :   " To prevent the admission of loose and uncertain testimony, countervailing the operation of an instrument made with the formal titles prescribed, it is provided that the revocation must be by another instrument executed in the same manner, or else by burning, cancelling, tearing or obliterating the same by the testator himself, in his presence and by his direction.   This is the language of the English Statute of Frauds, and of the statute law of every part of the United States."

1 Redfield on Wills 346;  1 Wms. Exrs. 5th Am. Ed., p. 159. No instrument can legally be properly characterized as a will until it is shown to have been executed in the manner provided by the statute for the execution of testamentary instruments. The authorities on this point are uniform.   *Wallis* v. *Wallis,* 114 Mass. 510;  *Waterman* v. *Whitney,* 11 N. Y. 157 ;  *Sugden* v. *St. Leonards,* L. R. 1 Prob. Div. 154 ;  *Crocker* v. *Chase,* 57 Vt. 413 ;  *Boylan* v. *Meeker,* 4 Dutcher 274 ;  *Newell* v. *Homer,*

120 Mass. 277; *Grant* v. *Grant*, 1 Sandf. Ch. 235; *Voorhees* v. *Voorhees*, 39 N. Y. 463; *Everitt* v. *Everitt*, 41 Babb. 385; *Brown* v. *Brown*, 8 El. & B. 876; *Podmore* v. *Whatton*, 1 Sw. & Tr. 449; *Mercer* v. *Mackin*, 14 Bush. 434.

It is true that the contents of a lost will, like that of any other written instrument, may be proved by parol, even by the testimony of a single witness, but before such testimony is admissible, the execution of such will must be proved in the manner required by statute, and the authorities are without exception on this subject. In this case there was no pretence, at the trial, to give any proof of the execution of the alleged revocatory will in the manner required by the statutes of this State.

The pretended declarations of the testator to the witness Delaney were wholly inadmissible to show a revocation of the will of 1881.

A will properly executed can only be revoked in the manner pointed out by statute, and the law is well settled upon the highest authority that it cannot be changed, revoked or annulled, or in any way affected by subsequent verbal declarations of the testator. *Jackson* v. *Kniffen*, 2 Johns. 31; *Dan* v. *Brown*, 4 Cowen 483; *Jackson* v. *Betts*, 6 Cowen 377; *Waterman* v. *Whitney*, 11 N. Y. 157; *Marx* v. *McGlyn*, 88 N. Y. 357, 374; *Sandford* v. *Ellithorp*, 95 N. Y. 48, 54; *Hargraves* v. *Redd*, 43 Ga. 142; *Boylan* v. *Meeker*, 4 Dutcher 274; *Comstock* v. *Hadlyme*, 8 Conn. 254; *Moritz* v. *Brough*, 19 S. & R. 403; *Pemberton* v. *Pemberton*, 13 Vesey 292; *Doe* v. *Perkins*, 3 B. & A. 489; *in the matter of Ladd's Will*, 60 Wis. 187.

An instrument purporting to be a will, with a clause of revocation of former wills, cannot be offered in evidence as a revocation only, without a probate thereof. *Sewall* v. *Robbins*, 139 Mass. 164; *Stickney* v. *Hammond*, 138 Mass. 116; *Laughton* v. *Atkins*, 1 Pick. 533; *Reid* v. *Borland*, 116 Mass. 208; *Rudy* v. *Ulrich*, 69 Pa. St. 177.

This alleged will, if it ever existed, must be presumed to have been destroyed by the testator. The case shows that when Delaney saw this will in 1885, it was in the testator's custody, and

it was never seen by any one else in his custody, or in the custody of any other person. Theobald on Wills, 3d Ed. 42; *Padmore* v. *Whatton*, 3 Sw. & Tr. 449; *in bonis* Shaw, 1 Sw. & Tr. 62; *Brown* v. *Brown*, 8 El. & B. 876; *Eckersly* v. *Platt*, 1 P. & D. 154; *Sugden* v. *St. Leonards*, L. R. 1 P. D. 154; *Idley* v. *Bowen*, 11 Wend. 227; *Holland* v. *Ferris*, 2 Bradford, 334; *Shultz* v. *Shultz*, 35 N. Y. 653; *Minkler* v. *Est. of Minkler*, 14 Vt. 125; *in re* Johnson's Will, 40 Conn. 588; *Newell* v. *Homer*, 120 Mass. 277; *Mercer* v. *Mackin*, 14 Bush, 434; *Helyar* v. *Helyar*, 1 Lee's Cases 472; *Welch* v. *Phillips*, 1 Moore P. C. 131; *Loxley* v. *Jackson*, Phil. 126, 2 Eccl. R. 275.

There is no evidence in the case that would warrant any jury in finding that the proponent alone, or in connection with Judge Taft, surreptiously destroyed this alleged will.,

The opinion of the court was delivered by

Ross, J. The statutory requirements for the legal execution of a written will and of a written revocation of a will are identical. R. L. ss. 2042, 2047. No good reason has been suggested, and none has occurred to this court, why the same kind, quality and method of proof should not be required for the establishment of its revocation, which have uniformly been required for the establishment of a will. Both instruments relate to the same subject matter, are controlled by the same public policy, and are required by statute to be executed with the same guards and formalities. To allow the revocation to be established by other and different evidence than is required for the legal establishment of a will, would partake of court legislation, rather than of proper construction of statutes, and defeat rather than enforce the legislative intent. The County Court required the contestants to establish the revocation by the same kind and measure which have been uniformly required for the establishment of the due execution of a will. It has not been claimed by the contestants that the proof produced and offered met this requirement. It was lacking in several essential par-

*In re* Noyes' Will.

ticulars. It did not tend to show whether the revocatory will was executed as the statute requires, nor whether the purported signatures of witnesses were genuine, nor who the witnesses were, nor whether they were living, or dead, nor, if living, whether they were within the reach of process from the court. The most that the evidence offered tended to show was, that the witness on one occasion was shown a paper by the testator, which he said was his will, which appeared to be signed by the testator, and had upon it what purported to be the names of three persons, whose names the witness did not remember, in the place usually occupied by the names of the witnesses to a will, and that this writing contained a clause revoking former wills. Beyond the declaration of the testator that it was his will, and his reasons for making it, it had no tendency to show that it was his will. But this had no tendency to show that it had been executed with the guards and formalities required by the statute. Hence the County Court properly refused to submit the evidence offered to the jury. The holding of the County Court was in accordance with the requirements of the statute and of public policy, and with the decisions of other courts of final resort. We entertain no doubt of its correctness. It is contended by the contestants that its holding required them to establish the revocatory will first in the Probate Court, and by certified copy of the judgment of that court. If this contention were supported by the record it would merit grave consideration. If the instrument attempted to be proved were simply a written revocation of the will offered for probate, it is not apparent why it should be first established in the Probate Court. No more is it apparent why a will containing a clause revoking former wills, need be established in its entirety as a will, to operate to defeat the probate of former wills; why the establishment of the revocatory clause in the appellate court would not be sufficient; and if the revocatory clause can be so established, why can not the whole revocatory will, so far as necessary to establish the revocation of former wills be so established? But the record, pp. 81 and 88, shows that no such requirement was made by the

decision of the court below, and only that the contestants should in the county court establish the revocation by producing the same kind and manner of proof, and under the same rules, governing the production of proof in that court for the establishment of the will. We need not therefore pass upon this contention. The result is, we find no error in the ruling and judgment of the County Court and that judgment is affirmed, and certificate stayed, and cause as to granting certificate continued to regular term.